IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>[1] YNOCENCIO ARIAS-MERCEDES,<br><br>Defendant. | NO.: 15-MJ-645(SCC) |

**MEMORANDUM AND ORDER**

Defendant Ynocencio Arias-Mercedes appeared before me for a preliminary and bail hearing on May 8, 2015. During the hearing, he moved to dismiss the criminal complaint filed against him on jurisdictional grounds. I reserved ruling on that motion, and now I deny it.

The basic facts are that a boat on which Arias and others were traveling was interdicted by the Coast Guard some 17 miles north of San Juan. The vessel flew no flag and had no visible registration number, but its occupants indicated that

they were Dominican nationals and had traveled from the Dominican Republic. The vessel was boarded to determine its registration, and, once the Coast Guard determined that the vessel was stateless, a search was performed. The search produced 72.5 kilograms of cocaine, and Arias and the other people found on the boat were arrested and charged.

Relying on *United States v. Maynard*, 888 F.2d 918 (1st Cir. 1989), Arias argued during the preliminary hearing that the Court lacked jurisdiction against him. In *Maynard*, the Coast Guard encountered a vessel twenty nautical miles south of Ponce. *See id.* at 919–20. The vessel's master said that he was sailing from Venezuela to Barbuda, and he consented to the Coast Guard's boarding. *See id.* at 920. After boarding, the Coast Guard found marijuana. *See id.* The vessel was declared stateless and seized. *See id.* The defendants challenged the Coast Guard's jurisdiction to search and seize the vessel. The First Circuit explained that the Coast Guard justified its boarding on the basis of statelessness. *Id.* at 922. Specifically, the basis for the finding of statelessness was a conjunctive statute that required a showing that (1) the vessel's master made a claim of registry *and* (2) that claim is denied by the nation where the vessel is supposedly registered. *Id.* The

*Maynard* court found that the vessel had made a claim of nationality, but the claim had never been denied. *Id.* 925–26. The court thus found that the vessel was not stateless within the statute's meaning, and the United States thus had no jurisdiction over the defendants' conduct. *Id.* at 927.

It is prohibited to knowingly or intentionally possess with intent to distribute a controlled substance on board "a vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(a)(1). The statute with which *Maynard* was concerned is now codified at 47 U.S.C. § 70502, and it provides the definition of a vessel subject to United States jurisdiction. As discussed in *Maynard*, these include vessels "without nationality." *Id.* § 70502(c)(1)(A). Vessels without nationality are further defined to include "a vessel aboard which the master or individual in charge makes a claim of registry that is denied by the nation whose registry is claimed" or with regard to which "the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." *Id.* § 70502(d)(1)(A), (C). In either of these cases, though, the claimed nation of registry must be asked to respond. *Id.* § 70502(d)(2). A vessel may also be deemed stateless if it master or the individual in charge "fails, on request of an officer of the

United States . . . , to make a claim of nationality or registry for that vessel." *Id.* § 70502(d)(1)(B).

Here, it is not clear whether the Coast Guard requested the vessel to make a claim of registry, but it can be inferred that the vessel was asked and claimed Dominican nationality. It is furthermore not clear from the affidavit supporting the criminal complaint whether the Dominican Republic was asked to verify the claim of registration, or whether or how it responded. Thus, it is not clear from the affidavit whether the vessel was stateless within the meaning of § 70502. At the least, an evidentiary hearing would be necessary to determine the question.

That said, there appears to have been an alternative basis for boarding the vessel. Section 70502 also defines a vessel subject ot the jurisdiction of the United States as one found "in the contiguous zone of the United States, as defined in Presidential Proclamation 7219" that "is entering the United States," "has departed the United States," or "is a hovering vessel." A "hovering vessel" is one that "is found or kept off the coast of the United States" that, from its "history, conduct, character, or location," it is "reasonable to believe . . . is being used or may be used to introduce or promote or facilitate the introduction

| UNITED STATES v. ARIAS-MERCEDES | Page 5 |
|---|---|

or attempted introduction of merchandise into the United States in violation of the law of the United States." 19 U.S.C. § 1401(k). Pursuant to Presidential Proclamation 7219, the contiguous zone of the United States extends 24 nautical miles from land, so long as that area is not within the territorial waters of another nation. Proclamation No. 5366, 64 Fed. Reg. 48,701 (Aug. 2, 1999).

The vessel in this case was found 17.4 miles north of San Juan, and it was thus within the United States's contiguous zone. Jurisdiction was thus proper if the vessel was also either a hovering vessel or a vessel entering the United States. It appears, furthermore, that the Coast Guard only need reasonable suspicion that either of these conditions were satisfied in order to board the ship. *See* 19 U.S.C. § 1401(k) (referring to "reason to believe" that a vessel is hovering). The affidavit shows that reasonable suspicion existed to support one or both of these findings: the vessel was small and occupied by Domincan nationals, but despite its size and apparent nationality, it was found some 150 miles from the Domincan Republic's easternmost point.[1] Furthermore, there is nothing north of San

---

1. According to Google Maps, it is approximately 150 miles from Punta Cana to San Juan as the crow flies.

| UNITED STATES v. ARIAS-MERCEDES | Page 6 |
|---|---:|

Juan for hundreds of miles, and, were the vessel traveling legitimately to some place east of Puerto Rico, like the Virgin Islands, it would have little reason to stay so far off shore, especially given its small size. These reasons—the vessel's size, its occupants' nationality, its distance from home and shore—as well as the Coast Guard's experience interdicting drug shipments from similar vessels provided ample probable cause to believe that the vessel was either hovering or entering the United States. Jurisdiction would be appropriate on that basis, and so Arias's motion is DENIED.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 11th day of May, 2015.

        <u>S/ SILVIA CARREÑO-COLL</u>
        UNITED STATES MAGISTRATE JUDGE